**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 9:11-cv-80991-KLR

JASON M. GROSS,
and others similarly situated

        Plaintiff,

vs.

NEXTERA ENERGY RESOURCES, LLC,
and FLORIDA POWER & LIGHT COMPANY

        Defendants.

_____/

## ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW

**THIS CAUSE** is before the Court upon Defendants' *ore tenus* Motion for Judgment as a Matter of Law made during jury trial at the close of Plaintiff's case. Oral argument on the motion was heard on March 12, 2013. Having carefully considered the evidence presented at trial, the filings, oral argument of counsel, the court file and applicable law, the undersigned is of the opinion that Defendants' Motion for Judgment as a Matter of law should be **GRANTED**.

## BACKGROUND

Plaintiff, Jason Gross ("Gross"), filed a three count Amended Complaint against Defendants, NextEra Energy Resources, LLC ("NEER"), and Florida Power & Light Company ("FPL"), seeking damages for alleged unpaid overtime and an additional claim of retaliation against FPL only, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–216 and 29 U.S.C. § 215(A)(3). Gross alleges that he was misclassified as an exempt employee and should receive overtime compensation for hours worked over forty hours a week.

Gross began his employment with NEER as a Business Associate in the Business Rotational Program on January 5, 2009. While a Business Associate at NEER, Gross sought out a position with FPL in the Strategic Initiatives group. Gross was offered a position as a Business Analyst in Strategic Initiatives and began his employment with FPL on August 14, 2010. Following workplace discipline by his supervisor in July 2011, Gross complained that he should be paid overtime. Gross alleges that his supervisor and Human Resources personnel created a hostile work environment following his complaint. Gross resigned from employment with FPL on July 20, 2011 alleging constructive discharge.

On March 12, 2013, following the second full day of jury trial, Plaintiff rested his case. Defendants then moved for judgment as a matter of law asserting that the evidence at trial established that Plaintiff was properly classified as an exempt employee by each employer pursuant to the administrative exemption. Having heard and reviewed all of the evidence presented at trial regarding the duties and responsibilities of Gross' positions both at NEER and FPL, the Court finds that Gross's positions were both correctly classified as exempt administrative jobs under the FLSA. Additionally, Gross failed to show any level of workplace animosity sufficient to establish a hostile work environment. The evidence clearly showed that Gross voluntarily resigned and was not constructively discharged. These conclusions are fatal to Gross's case.

## **DISCUSSION**

### **A. Rule 50 Standard**

Rule 50 of the Federal Rules of Civil Procedure provides in pertinent part –

**(a) Judgment as a Matter of Law.**

**(1) *In General.*** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

**(A)** resolve the issue against the party; and

**(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**(2) *Motion.*** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

The court reviews a motion for judgment as a matter of law considering all the evidence in the light most favorable to the party opposing the motion. *Echeverria v. Chevron USA, Inc.*, 391 F.3d 607 (5th Cir. 2004). Nonetheless, a non-movant must present more than a mere scintilla of evidence. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). In deciding the question of whether to grant judgment as a matter of law the Court applies the standard of whether "no reasonable jury could have a reached a verdict for the plaintiff" on the claim." *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005).

### B. Plaintiff Qualified for the Administrative Exemption

The FLSA provides that employees are generally entitled to receive overtime pay at one-and-a-half times their regular hourly rate for all hours worked in excess of forty (40) per week. 29 U.S.C. § 207(a)(1). The FLSA, however, exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The employer bears the burden of showing entitlement to an exemption. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 594 (11th Cir.1995) (citing *Brock v. Louvers & Dampers, Inc.,* 817 F.2d 1255, 1256 (6th Cir.1987)); *Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir.1994) (citing *Brennan v. Sugar Cane Growers Co-op.,* 486 F.2d 1006 (5th

Cir.1973)).

The Code of Federal Regulations sets forth regulations interpreting the FLSA. Those regulations are given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. *See Gregory v. First Title of Am., Inc.,* 555 F.3d 1300, 1302 (11th Cir.2009) (citing *Chevron, U.S.A. v. NRDC, Inc.,* 467 U.S. 837, 843–44 (1984)).

The current regulations interpreting the FLSA define an administrative employee as one: (1) who is compensated on a salary basis at a rate not less than $455 per week; (2) whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). *Griffin-Moore v. The City of Brooksville, Florida*, 2013 WL 806674 (M.D. Fla. March 5, 2013) (citing *Rock v. Ray Anthony Intern. LLC*, 380 F. App'x 875, 877 (11th Cir. 2010)).

With respect to the phrase "directly related to the management or general business operations," the regulations provide:

> The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line *or selling a product in a retail or service establishment.*

29 C.F.R. § 541.201(a) (emphasis added). Examples of such work include, but are not limited to:

> work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

In determining whether work is "directly related to the management or general business operations of the employer or the employer's customers," courts draw a distinction between "production work"—that is, work that generates the products or services that the employer provides to the public or is related to the carrying out of the company's day-to-day affairs—which does not qualify as exempt, and true administrative work—that is, work that is ancillary to the employer's principal "production" activity, such as work related to running the business itself or determining its overall course or policies—which is exempt. *See, e.g., Cotten v. HFS–USA, Inc.,* 620 F.Supp.2d 1342, 1347 (M.D. Fla. 2009) (quoting *Talbott v. Lakeview Ctr., Inc.,* No. 3:06cv378/MCR/MD, 2008 WL 4525012, at *4 (N.D. Fla. Sept.30, 2008)); *Kessler v. Lifesafer Serv. Providers, LLC*, 545 F. Supp. 2d 1244, 1246–47 (M.D.Fla.2008) (citing *Renfro v. Ind. Mich. Power Co.,* 370 F.3d 512, 517 (6th Cir.2004) ).

The term "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations further provide as follows:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

With respect to the amount of time spent performing particular tasks, the regulations provide as follows:

The amount of time spent performing exempt work can be a useful guide in

determining whether exempt work is the primary duty of the employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700(b).

Regarding the "exercise of discretion and independent judgment with respect to matters of significance" prong, the regulations provide as follows:

To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. § 541.202(a).

The phrase, "'discretion and independent judgment' must be applied in light of all the facts involved in the particular employment situation in which the question arises," and the regulation provides a number of factors to be considered in determining whether an employee exercises discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.202(b). Moreover, the phrase "exercise of discretion and independent judgment" "implies that the employee has the authority to make an independent choice, free from immediate direction or supervision," although the employee may still exercise discretion and independent judgment "even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c).

An employee may exercise discretion and independent judgment with respect to matters of significance, even if multiple employees perform similar work. 29 C.F.R. § 541.202(d).

There is no question that Gross was paid a set salary each week well in excess of $455 per week. The evidence established that his starting salary at NEER was $63,000 per year or $1,211.54 per week with a signing bonus of $7,500, and his salary at FPL was $67,473 per year or $1,297.56 per week; therefore, the Court's inquiry focuses on the second and third prongs of the foregoing analysis.

### 1. Plaintiff's Primary Duty Was in the Performance of Office Work Directly Related to The Management or General Business Operations of NEER and FPL

Gross's primary focus while with NEER was dedicated to providing research, financially accurate and timely information, and advice concerning the development of new power plant projects and the daily operations and future success of existing power plants. He also developed new financial models and forecasts for power marketing to ensure the economic success of the power plants in terms of purchasing the fuel necessary to run the plants, as well as the ability to sell the power the plants generated. His primary focus while working for FPL was to research, analyze, and provide financial models and recommendations for new technologies for providing electric power. The Court finds these duties "directly relate[ ] to assisting with the running or servicing of the business[es]," 29 C.F.R. § 541.201(a), and therefore, prong two is satisfied.

Gross's own testimony established that he primarily performed non-manual work directly related to the primary business operations of NEER, that is, the development of, operation of and success of various power plants throughout the United States and Canada, and related to the primary business of FPL, the production of electric power. *See Griffin-Moore v. The City of Brooksville, Florida,* 2013 WL 806674, *4-5 (M.D. Fla. March 5, 2013) (finding every project plaintiff management analyst worked on was significant, had a purpose, was part of what the City used in how they moved forward and made decisions). Gross managed and directed matters that were paramount to the successful business operations on behalf of NEER. At FPL, Gross

was given projects without direct supervision and without direct task-ordered lists that were directly related and were of significance to FPL's business: providing power. It is clear that Gross's duties were of the type of primary duties provided in 29 C.F.R. § 541.201(b) and were related to running the businesses themselves and their overall course and policies. *See* 29 C.F.R. § 541.201(b) (listing finance, accounting, auditing, research, and marketing as examples of work duties "directly related to the management or general business operations").

### 2. Plaintiff Exercised Discretion and Independent Judgment With Respect to Matters of Significance

The third prong of the analysis is also satisfied, in that Gross's "primary dut[ies] . . . include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." "This work is defined as 'involv[ing] comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" *Talbott,* 2008 U.S. Dist. LEXIS 84065, at *20-21 (quoting 29 C.F.R. § 541.202(a)).

The Department of Labor regulations provide ten factors for consideration in determining whether an employee exercised independent discretion and judgment. *See* 29 C.F.R. 541.202(b). Other factors considered by the Department of Labor meriting consideration include the employee's freedom from close supervision, supervisory responsibilities, problem-solving ability, the level of contact with the employer's customers, and other activities with or on behalf of the employer's customers. *See Talbott,* 2008 U.S. Dist. LEXIS 84065 at *22-23 (citing Preamble, 69 Fed. Reg. 22122, 22144).

Gross's duties met many of the factors: (1) he had the "authority to formulate, affect, interpret, or implement management policies or operating practices;" (2) he carried out "major

assignments in conducting the operations of the business;" (3) he performed "work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;" (4) he had "authority to commit the employer to matters that have significant financial impact" by making trades in power markets; and (5) he investigated and resolved "matters of significance on behalf of management." 29 C.F.R. 541.202(b).

Additionally, Gross routinely operated free from close supervision. He was given authority to communicate freely with NEER's clients, vendors, and third parties to gather information related to the business operations of NEER, and had much the same degree of freedom at FPL, where he met with vendors and other third parties regarding information needed to assess and analyze new technologies for FPL. *See Hein v. The PNC Financial Servs. Grp., Inc.,* 511 F. Supp.2d 563 (E.D. Pa. 2007) (concluding that because the employee's supervisor did not observe his meetings with clients or listen to his phone conversations with clients, the employee exercised a high degree of independence and discretion). This evidence was presented in the form of testimony from Robin Saiz, Gross's supervisor at NEER, Alex Zappani, his supervisor at FPL, and Sandeep Dudwhehala, his colleague at FPL. Therefore, the Court concludes that the third prong of the analysis is satisfied as Gross exercised substantial discretion in performing his duties as a Business Associate at NEER and Business Analyst at FPL.

### 3. Whether Plaintiff is Exempt from the FLSA is a Question of Law

Whether certain activities exclude an employee from FLSA overtime benefits is a matter of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713 (1986) ("The question of how the respondents spent their working time on board the Arctic Star is a question of fact. The question of whether their particular activities excluded them from the overtime benefits of the

FLSA is a question of law . . . ."); *see Klinedinst v. Swift Investments, Inc.* 260 F.3d 1251, 1254 (11th Cir. 2001) ("The determination of whether a given employee falls within the scope of a FLSA exemption, while based on the underlying facts, is ultimately a legal question.").

Accordingly, the underlying facts support that Gross's work fell within the administrative exemption of the FLSA. Therefore, as a matter of law, Gross is exempt from the requirements of the FLSA because both his jobs, at NEER and at FPL, met the criteria for the administrative exemption.

## C. PLAINTIFF'S RETALIATION CLAIM

Gross also alleges that he was subjected to a hostile work environment after he verbally complained to his supervisor, Alex Zappani ("Zappani"), that he should be paid overtime compensation. While there was conflicting testimony as to when he first made the verbal complaint regarding overtime, July 1, 2011 or July 12, 2011, it is clear that the complaint was made after Gross was verbally disciplined by Zappani for missing a deadline on a project. The record is also clear that following July 1, 2011, Gross took time off from work for the July 4, 2011, holiday. Zappani met with Gross on July 12, 2011, to issue Gross a formal written Report of Discipline for, *inter alia*, missing project deadlines, missing meetings and not following company policy. While Gross admits he received the Report of Discipline, he also admits he did not sign it and therefore decided unilaterally that he need not comply with its requirements.

Gross admits that he continued to work in the Strategic Initiatives group following the issuance of the discipline. Gross did complain to Human Resources that he felt he was being treated unfairly by his supervisor by being issued the Report of Discipline. Gross admits he met with Human Resources manager Sharon Kirby-Lue ("Kirby-Lue") on July 19, 2011 to discuss his concerns, and that when she requested he sit down with her and Zappani to talk, he refused to

participate further. Gross testified that he felt he could talk to his Zappani himself and did not need Kirby-Lue to help him. The following day, July 20, 2011, before 8:00 a.m., Gross sent an e-mail to Zappani resigning his position. Zappani accepted Gross's resignation and the company paid Gross two weeks' notice. Gross did not work after that date. The testimony from both Zappani and Sandeep Dudwhehala, his colleague at FPL, was consistent with Gross' testimony: Gross continued to work normally and collaboratively with the Strategic Initiatives group up until the date of his resignation, July 20, 2011.

The FLSA provides that an employer may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this Act . . . ." 29 U.S.C. 215(a)(3). In this case, Gross alleges that he was constructively discharged when he resigned due to a hostile work environment.

In order to prevail on a constructive discharge claim, the employee must demonstrate that his working conditions were so intolerable that a reasonable person in their position would be compelled to resign. *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989). In this case, there are no facts to support Gross's claim of a hostile work environment. Gross was issued a Report of Discipline for missing deadlines; he put forward no facts that the Report was issued for any other reason or in a retaliatory manner. Indeed, the testimony of Zappani made clear that the Report was issued because of Gross's poor performance. There was no evidence which supported work place conditions were intolerable. Notably, there was an insufficient lapse of time between Gross's complaint of overtime compensation (July 1 or 12, 2011) and his resignation (July 20, 2011) for him to be subjected to a hostile work environment. Rather than seek to address any underlying issues with Zappani after his meeting with Kirby-

Lue, as recommended, Gross submitted his resignation. There is no evidence to support that his hand was forced. On the contrary, Gross was given two-weeks' pay for which he did not work. Accordingly, Gross's claims of retaliation and constructive discharge fail.

## CONCLUSION

Taking the evidence in the light most favorable to the Gross, there is no legally sufficient basis for a jury to find for Gross on his claims of unpaid overtime compensation or retaliation against the Defendants. Therefore, upon consideration of the evidence presented at trial, the court file, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion for Judgment as a Matter of Law is **GRANTED**. In accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 12 day of April, 2013.

/s/ Kenneth L. Ryskamp_____
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE